UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
(at Covington)

| | | |
|---|---|---|
| CARY WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 2: 21-080-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| KENTON COUNTY, et al., | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | |

*** *** *** ***

The parties have filed motions *in limine* in advance of trial, which will be rescheduled to begin March 3, 2025. [Record Nos. 118, 123] Both parties filed responses and replies. [Record Nos. 124, 126–28] Objections that have not been resolved include: (1) Body Worn Camera ("BWC") footage from Plaintiff Cary Williams' arrest; (2) lawsuits alleging excessive force at Kenton County Detention Center ("KCDC"); (3) excessive force disciplinary records of various officers at KCDC; (4) KCDC inmate violations and sanctions notice; (5) American Correctional Association ("ACA") excerpt; (6) KCDC 1.1.1 and 1.1.12 policies on its management philosophy and auditing inmate programming; and (7) Kentucky Administrative Regulations ("KAR") for Prisoner Rights.[1]

## I. Background

---

[1] The defendants also request a pre-trial ruling on Joint Exhibit 2 which would not allow the plaintiff to present arguments and evidence that Schoultheis used a prohibited vascular restraint, chokehold, or hypoglossal pressure technique to restrict Williams's blood or airflow. [Record Nos. 118 at 7–8, 126 at 26–29] The undersigned is not inclined to issue such a ruling on an agreed exhibit at this stage.

The issues remaining for trial dictate the bounds of what evidence is relevant. During trial, the jury must determine whether Defendant Deputy Noah Schoultheis violated Plaintiff Williams' constitutional right to be free from excessive force while he was at the KCDC. If the jury finds that Schoultheis did violate that right, it will consider whether Kenton County is also liable for the plaintiff's injuries. This can be accomplished by showing the County either maintained an unconstitutional policy or custom, failed to train or supervise its officers, or ratified the unconstitutional acts of its officers, which resulted in the plaintiff's injuries. The plaintiff seeks compensatory damages for pain and suffering, disability, disfigurement, mental anguish, and loss of capacity for enjoyment of life as well as punitive damages.

## II. Legal Standard

A motion *in limine* seeks "to exclude anticipated prejudicial evidence before the evidence is actually offered." *Louzon v. Ford Motor Co.*, 718 F.3d 556, 561 (6th Cir. 2013) (citing *Luce v. United States*, 469 U.S. 38, 40 n.2 (1984)). Such motions are "designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions." *Id.* (citing *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1069 (3d Cir. 1990)). "[M]otions *in limine* are not intended to resolve factual disputes," and courts should only exclude challenged evidence when it is "clearly inadmissible." *Louzon v. Ford Motor Co.*, 718 F.3d 556, 561 (6th Cir. 2013) (citing *Williams v. Johnson*, 747 F. Supp. 2d 10, 14 (D.D.C. 2010)); *Lotz v. Steak N Shake, Inc.*, No. 19-cv-277, 2021 WL 2270353, at *1 (E.D. Ky., June 3, 2021). Whether to grant a motion *in limine* falls within the trial court's sound discretion. *Branham v. Thomas Cooley Law Sch.*, 689 F.3d 558, 560 (6th Cir. 2012).

While district courts enjoy "broad discretion in determining the relevancy of evidence and in passing upon its admissibility under Rule 401" the "'better practice' is to defer evidentiary rulings until trial unless the evidence is clearly inadmissible on all potential grounds." *Middleton v. SelecTrucks of Am., LLC*, 589 F. Supp. 3d 687, 691 (W.D. Ky. 2022) (citation omitted). As such, a court's ruling *in limine* is "no more than a preliminary, or advisory, opinion" that may be altered or amended at trial. *United States v. Yannott*, 42 F.3d 999, 1007 (6th Cir. 1994) (citing *United States v. Luce*, 713 F.2d 1236, 1239 (6th Cir. 1983)).

### III.  Analysis

**A.  Footage of the Plaintiff's Arrest**

The plaintiff's only remaining objection concerns defendants' Exhibit 1. He argues the exhibit should be excluded because it contains inadmissible hearsay and character evidence, is prejudicial, and is not relevant to the remaining issues to be tried.[2] [Record Nos. 123 at 1–2, 128] The defendants contend that causation is disputed; therefore, the part of the video depicting the fall should be admitted. [Record No. 124 at 2–3] The footage is admissible because Williams' fall and the immediate events that followed are relevant to what caused his broken arm. [*See* Record No. 93 at 2–4.] It is also relevant to the extent of his drunkenness one hour and thirty-three minutes before he fell at KCDC. *See id.*

The exhibit contains two BWC videos, one for each police officer present during the arrest. [Record No. 114, DX-1: Dispute-Active, Dispute-Active(1)] Of the two videos, the longer one, Dispute-Active(1), has the best view of Williams' fall, the propping of his right

---

[2]  Plaintiff attempts, in error, to construe the Court's comments in the summary judgment order as a definitive ruling on causation pursuant to the law of the case doctrine. [Record Nos. 116 at 38, 123 at 2]

- 3 -

arm after the fall, and Willians getting into the police cruiser. The relevant section in Dispute-Active(1) is from 6:47–9:35 and 6:26–9:14 in Dispute-Active. Allowing the jury to see the officer holding up Williams' right arm and his attempts to get into the police cruiser would assist in determining whether he was injured before arriving at KCDC. It would also help the jury evaluate the extent of his inebriation one hour and thirty-three minutes before his second fall, which is relevant to the impact his intoxication had on the injuries that he alleged occurred at KCDC.

Additionally, Williams' intoxication is relevant because he seeks compensatory damages for pain and suffering. This is bolstered by the fact that there is no indication he complained of arm pain before the nurse arrived to check his blood sugar, which was around four hours after he fell in the cell. [Record No. 93 at 4–5] A jury could consider his inebriation when assessing damages for pain and suffering. Regarding Williams' claim that the footage contains inadmissible hearsay and character evidence, the relevant parts do not contain hearsay or any references to alleged acts at the bar. The only reference to the bar is about Williams' bank card. In the relevant portion, he is heard expressing no more than annoyance regarding his arrest.

### B. Lawsuits Alleging Excessive Force

Plaintiff's Exhibit 19 lists past excessive force lawsuits against KCDC. [Record No. 42 at 6–9] The defendants argue the exhibit is not relevant to the remaining issues to be tried[3] and that the heavily redacted version plaintiff resubmitted is prejudicial and distracting for a

---

[3]   Much like plaintiff's error addressed in footnote 2, the defendants stretch too far the words of the Court at summary judgment and the application of law of the case doctrine regarding the type of force used. [Record No. 127 at 7]

jury. [Record Nos. 118 at 2–3, 127 at 3–7] Williams contends in response that to develop his failure-to-train theory for *Monell* liability, these "prior instances of unconstitutional conduct" demonstrate Kenton County has "'ignored a history of abuse'" and "'was clearly on notice'" of its deficiencies in a particular area that were likely to cause injury. [Record No. 126 at 2 (quoting *Victor v. Reynolds*, No. 1:20-CV-13218, 2024 WL 811515, at *12 (E.D. Mich. Feb. 27, 2024) (citing *Plinton v. Cnty. of Summit*, 540 F.3d 459, 464 (6th Cir. 2008); *Fisher v. Harden*, 398 F.3d 837, 849 (6th Cir. 2005)).] The Court concludes that this exhibit is significantly more prejudicial than probative because it contains scant allegations with no indication of investigation or follow-up while other evidence is available to Williams to prove his *Monell* claims.

### C. Excessive Force Disciplinary Records

The defendants object to plaintiff's Exhibits 20–22 and 25 on the basis that these excessive force disciplinary records for KCDC are not relevant because they are "factually dissimilar" claims that do not involve Schoultheis. [Record Nos. 118 at 3–4, 127 at 7] But Williams insists that the conduct outlined in these exhibits is sufficiently similar to Schoultheis' use of force. Further, exclusion would prejudice the plaintiff's ability to develop his claims. [Record No. 126 at 3–7] These reports are relevant and contain sufficiently similar uses of force, and it does not matter for a *Monell* claim that they do not involve Schoultheis.

Unlike the bare allegations in Exhibit 19, these exhibits demonstrate that the particular uses of force were known to, investigated by, and deemed worthy of disciplinary actions by KCDC. For Williams to succeed on his *Monell* claim for failure to train and supervise, he must show: (1) the supervision or training was inadequate; (2) the need for more or different training or supervision was so obvious and the inadequacy of the training or supervision was

- 5 -

so likely to result in violations of constitutional rights that the County can be said to be deliberately indifferent to the need for such training or supervision; and (3) the lack of proper training or supervision was a cause of plaintiff's injury. 3B Fed. Jury Prac. & Instr. § 165:27 (6th ed.) (citing *City of Canton v. Harris*, 489 U.S. 378, 388, (1989)); *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013). To meet this burden, the plaintiff must show "prior instances of similar misconduct" that indicate the County was on notice that its training or supervision on the use of force was deficient. *Jackson v. City of Cleveland*, 925 F.3d 793, 836 (6th Cir. 2019). Regarding the need that the past instances be "particularized," the "alleged pattern of similar unconstitutional conduct . . . need not be identical, or even 'almost identical'" to what Williams alleges occurred. *Franklin v. Franklin Cnty., Kentucky*, 115 F.4th 461, 472–73 (6th Cir. 2024) (citing *Connick v. Thompson*, 563 U.S. 51, 62 (2011); *Simpkins v. Boyd Cty. Fiscal Ct.*, No. 21-5477, 2022 WL 17748619, at *13 (6th Cir. Sept. 2, 2022)). Here, these disciplinary records relate to instances within two years of Williams' injury, and they all involve sufficiently similar unwarranted or excessive uses of force.

While these exhibits are not relevant to the excessive force claim against Schoultheis, they are to the *Monell* claims against the County. Further, they are relevant to the County's defense. It is true that these exhibits contain evidence that the County was on notice to excessive or unwarranted uses of force, but they also outline the investigation and disciplinary actions taken by KCDC. Therefore, they can also aid the County in showing they did not ratify the unconstitutional actions of their officers.

### D. Inmate Violations and Sanctions Notice

The defendants object to plaintiff's Exhibit 36, which provides notice to new inmates on prohibited behaviors and corresponding sanctions, because Williams never entered general

population, and there is no relevance to the claim against Schoultheis. [Record Nos. 118 at 4–5, 127 at 9–10] However, Williams argues that the exhibit is relevant to whether Schoultheis' use of force was objectively reasonable because it states that no form of corporal punishment is allowed in response to an infraction. [Record No. 126 at 15–16] This exhibit will not be admitted because there is no indication that the force imposed on Williams was corporal punishment and the eight-page document contains a host of irrelevant and distracting information.

### E.  ACA Excerpt

The defendant argue that Exhibit 39 should not be admitted because KCDC is not a member of the ACA and its expected practices regarding the use of force are not relevant to the case against them. [Record Nos. 118 at 5, 127 at 10] Conversely, the plaintiff contends that these standards are relevant because KCDC references and cites portions in their own policies. [Record No. 126 at 21–23] But just because KCDC includes ACA standards in some of its policies and intends one day to seek accreditation does not transform the entirety of these standards into something relevant to Williams' claim.

### F.  KCDC Policies

The defendants object to two KCDC policies. Plaintiff Exhibit 40 is KCDC policy 1.1.1 on the facility's management philosophy, which includes the word "punishment." The defendants argue that the inclusion of this policy runs the risk of allowing the plaintiff to present an as applied argument regarding the Eighth Amendment and the word "punishment" that presents a "legal distinction for a jury" that is "too nuanced." [Record No. 118 at 10–11, 127 at 5–6] Williams responds that the policy is written in layperson's terms and designed for

public consumption; therefore, the defendants' theory that its inclusion is prejudicial lacks merit. [Record No. 126 at 20]

While the policy is not specific to the use of force, the plaintiff argues that it remains relevant to his *Monell* claims. The connection, he insists, pertains to his ratification theory because the policy states that KCDC operates a system that provides "all necessary due process and other legal safeguards" and a "safe, humane detention center." [Record No. 126 at 19–20] Therefore, plaintiff continues, if KCDC ignored violations of such policies, its permissiveness could rise to the level of ratification. *Id.* (citing *Wright v. City of Euclid, Ohio*, 962 F.3d 852, 882 (6th Cir. 2020) (citing *Leach v. Shelby Cty. Sheriff*, 891 F.2d 1241, 1247–48 (6th Cir. 1990)).

Because this policy covers KCDC's management philosophy and was created by KCDC, it remains relevant to the remaining claims. Should a limiting instruction become necessary or if the plaintiff attempts to use it to make an argument unsupported by the facts or legal claims at issue, that is best addressed during trial.

The defendants' next objection is to Exhibit 41, which is KCDC policy 1.1.12 outlining the process for programming auditing and review. [Record Nos. 118 at 6, 127 11–12] The plaintiff's anticipated use of this exhibit was to facilitate the connection between KCDC and the ACA standards in Exhibit 39. [Record No. 126 at 22–23] Because the ACA standards are not relevant, this exhibit is likewise not relevant.

### G. KAR on Prisoner Rights

Finally, the defendants object to the inclusion of 501 KAR 3:140 "Prisoner Rights" (Exhibit 43) on the basis that it is not relevant to any issue of fact the jury must decide. [Record Nos. 118 at 6, 127 at 12] The plaintiff indicates that he intends to use the exhibit to show that

- 8 -

KCDC had a legal duty to maintain a "'written policy and procedure for maintaining discipline, consistent with the constitutional requirements for due process.'" [Record No. 126 at 25 – 26 (quoting 501 KAR 3:140)]  However, the defendants do not contest this requirement and the plaintiff has other evidence available to develop that claim.  [*See* Record No. 128 at 12.]  The exhibit will not be admitted because it otherwise lacks relevant content, may be confusing to the jury, and would be cumulative.

### IV.  Conclusion

Based on the above analysis and discussion, it is hereby **ORDERED** as follows:

1. The plaintiff's motion *in limine* [Record No. 123] is **DENIED**, with respect to Plaintiff Williams' arrest video.

2. The defendant's motion *in limine* [Record No. 118] is **GRANTED**, with respect to the lawsuits alleging excessive force, inmate violations and sanctions notice, ACA excerpt, KCDC 1.1.12 policy on programming auditing, and KAR on prisoner rights but **DENIED** with respect to the excessive force disciplinary records and KCDC 1.1.1 policy on management philosophy.

3. This matter is **SCHEDULED** for a jury trial on **Monday, March 3, 2025**, beginning at the hour of **9:00 a.m.**, at the United States Courthouse in Covington, Kentucky. Counsel and the parties are directed to be present at **8:30 a.m.** on that date.

Dated: November 18, 2024.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky