IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT COVINGTON

| | |
|---|---|
| **CARY WILLIAMS,**<br><br>    Plaintiff,<br><br>v.<br><br>**KENTON COUNTY, ET AL.,**<br><br>    Defendants. | Case No. 2:21-cv-00080<br><br>Judge William O. Bertelsman<br><br>Magistrate Judge Candace J. Smith |

**PLAINTIFF'S MOTION *IN LIMINE* TO EXCLUDE DEFENDANTS'
NEWLY DISCLOSED EXHIBIT NO. DX-5**

Plaintiff respectfully moves this Court *in limine* to exclude Defendants' Exhibit DX-5, filed as Doc. 140-1. The Court should exclude this exhibit as irrelevant under its prior rulings and Fed. R. Evid. 401–402 and, alternatively, as unfairly prejudicial under Fed. R. Evid. 403.

The Court should also exclude this exhibit under Fed. R. Civ. P. 37(c)(1) because Defendants—without explanation, let alone substantial justification—first produced this document to Plaintiff's counsel one business day before trial, even though it was subject to Fed. R. Civ. P. 26(a)(1) mandatory disclosures and responsive to at least 11 written discovery requests.

**FACTUAL AND PROCEDURAL BACKGROUND**

It is undisputed that, before Defendant Noah Schoultheis used force against Plaintiff Cary Williams in the presence of Deputies Slaughter and Fleckinger, Plaintiff complied with orders to give officers his underwear by tossing it toward them. Although neither Schoultheis nor Deputy Slaughter testified that the underwear was wet, Deputy Fleckinger testified that he saw Plaintiff "throw some urine-soaked underwear onto Schoultheis's face." Schoultheis Dep., Doc. 74-7, PageID ##582–83 (denying seeing urine on Plaintiff's clothing); *see* Slaughter Dep., Doc. 74-13

(no testimony on seeing wet clothing or underwear); Fleckinger Dep., Doc. 74-14, PageID #1235. Video of the incident does not depict the underwear as wet. Doc. 76.

On the evening of Thursday, March 13, 2025, less than two business days before the trial of this matter was set to begin, Defendants' counsel advised Plaintiff's counsel that Defendant Kenton County had possession of a full-length photograph of Plaintiff, which was allegedly taken at booking and allegedly depicted a spot on his pants. Ex. 1-A, Email sent Mar. 13, 2025 at 6:18 p.m. Defendants had never previously disclosed the existence of DX-5. Ex. 1, ¶ 3. Defendants' counsel did not actually produce the photograph until Friday, March 14. Ex. 1-B, Email sent Mar. 14, 2025 at 8:20 a.m.; Ex. 1, ¶ 5. Defendants then filed an amended Trial Exhibit List designating DX-5. Docs. 140, 140-1.

Defendant Kenton County has offered no explanation to justify this late production. Ex. 1, ¶ 6; *see* Exs. 1-A, 1-B. To the contrary, the March 14 email indicates that the failure was unjustified by including a screenshot from Kenton County Detention Center Lieutenant Jon Spang showing that this full-length photograph of Plaintiff was uploaded August 16, 2020, just like the photographs of Plaintiff's face previously produced. Ex. 1-B, Email sent Mar. 14, 2025 at 8:20 a.m.

II.   **Defendants Failed to Identify or Produce DX-5 in Disclosures or Discovery Responses.**

   A.   **Defendants' Initial Disclosures**

Defendants served their Fed. R. Civ. P. 26(a)(1)(A) initial disclosures on October 14, 2021 but did not produce or identify the full-length photograph as required by Rule 26(a)(1)(A)(ii). Ex. 1, ¶¶ 3, 5; Ex. 1-C, Defs. Initial Disclos. Defendants never supplemented their initial disclosures with any production of this photo before the close of discovery or at any time before March 14, 2025. Ex. 1, ¶ 8.

**B.**     **Defendant Kenton County's Responses to Requests for Production**

Defendants withheld this full-length photograph of Plaintiff when responding to discovery requests propounded October 5, 2021. Ex. 1, ¶¶ 3, 5; Ex. 1-E. This photograph was unquestionably responsive to the following Requests for Production to Kenton County:

1. All documents that relate to, support, and/or rebut any of the allegations in Plaintiff's Amended Complaint.

2. All documents relating to or supporting Defendants' affirmative defenses and answer to the Amended Complaint in this action, including all documents which Defendants may rely upon at trial.

3. All documents and communications relating to the incident giving rise to this lawsuit, including but not limited to all … photographs, mug shots, polaroids, … digital data, digital files or print-outs, electronic data, electronic files or print-outs, … or any recordings taken on individual officers' personal or department-issued cellular phones, cameras, or other recording devices in their possession, ...[.] This also includes any and all metadata associated with the original documents.

4. Any photographs, videos, or other recordings of or relating to the incident giving rise to this lawsuit, including those taken on individual corrections officers' cellular phones, cameras, or other recording devices in their possession.

   …

18. Any and all reports and/or documents relating in any way to any claim of injury by the Defendants as a result of the incident(s) set forth in Plaintiff's Amended Complaint, including, but not limited, to injury on duty reports, battery on an officer report, departmental reports of any kind, and any and all medical records and reports.

   …

21. All documents that support a contention in this litigation that Defendants' use of force against Cary Williams on August 16, 2020 was reasonable.

   …

32. Any and all documents and physical evidence that any Defendant may offer at trial and which is not included in any other requests.

Ex. 1-D, Req. for Prod. to Def. Kenton County. These Requests for Production explicitly defined "documents" to include "photographs" and "electronic data and files…which are in the possession, custody or control of Defendant and/or their attorneys, representatives, agents, or anyone acting for or on Defendant's behalf." *Id*. Defendant Kenton County's discovery responses did not include production or disclosure of DX-5. Ex. 1, ¶¶ 3, 5; Ex. 1-E, Def. County Resp. to Req. for Prod.

**B.   Defendant Kenton County's Fed. R. Civ. P. 30(b)(6) Deposition Topics and Accompanying Request for Production**

On March 10, 2022, Plaintiff served a Fed. R. Civ. P. 30(b)(6) Notice of Deposition upon Defendant Kenton County that included the following topic:

> Topic 7: Facts relating to Cary Williams' detention in KCDC from August 16-17, 2020, including but not limited to:
>
> a. The identities of KCDC staff who interacted with Cary Williams on August 16 to 17, 2020 and the dates and times of those interactions;
>
> b. The identities of KCDC staff who were present in Cary Williams' cell block on August 16 to 17, 2020 and the dates, times, and locations where they were present;
>
> c. All communications between deputies and any supervisors concerning Cary Williams from August 16 to 17, 2020 at KCDC;
> d. The identity of the deputy who stated to Cary Williams, "If you had thrown your underwear at me, you wouldn't being walking out of here today";
> …
> e. Whether Kenton County has investigated and/or disciplined the deputy who stated to Cary Williams, "If you had thrown your underwear at me, you wouldn't being walking out of here today" in relation to that conduct, and if so, the outcomes, results, findings and/or discipline associated with that investigation and/or discipline;
>
> a. All entries, logs, and all other documents or communications concerning Cary Williams in KCDC from August 16 to August 17, 2020;
>
> b. Observation of Cary Williams while in intake, while on suicide watch, and while housed in KCDC from August 16 to August 17, 2020;

>   c. All investigations concerning the use of force against Cary Williams and/or access to and/or provision of medical care to Cary Williams;
>   d. Any disciplinary action taken against any employee of Kenton County related to the use of force against and/or injuries sustained by Cary Williams and/or access to and/or provision of medical care to Cary Williams[.]

Ex. 1-F, Fed. R. Civ. P. 30(b)(6) Notice of Dep. The Notice was accompanied by an additional Request for Production seeking "Any and all documents related to the above-referenced topics, including those documents which will be relied upon by the person(s) so designated to prepare for or testify during this deposition." *Id*. Defendant Kenton County did not produce DX-5 in response to this Request, and Plaintiff's counsel did not have opportunity to ask the County's Fed. R. Civ. P. 30(b)(6) representatives about this undisclosed document. Ex. 1, ¶¶ 3, 5, 12–13.

### C.    Defendant Schoultheis's Responses to Requests for Production

Similarly, Requests for Production served upon Defendant Schoultheis on October 5, 2021 asked him to produce:

>   4. All documents and communications relating to or supporting Defendant's affirmative defenses and answer to the Amended Complaint in this action, including all documents which Defendant may rely upon at trial.
>
>   5. All documents and communications relating to the incident giving rise to this lawsuit, including but not limited to all … photographs, mug shots, polaroids, … digital data, digital files or print-outs, electronic data, electronic files or print-outs, … or any recordings taken on individual officers' personal or department-issued cellular phones, cameras, or other recording devices in their possession, ...[.] This also includes any and all metadata associated with the original documents.
>
>   …
>
>   12. All documents and communications that support your contention that your use of force against Cary Williams on August 16, 2020 was reasonable.
>
>   13. All documents and communications that support a claim that you acted consistently with any of the policies or practices of the Kenton County Detention Center (formal or informal, written or unwritten) at any time during any event or circumstance described in Plaintiff's Amended Complaint.

Ex. 1-G, Req. for Prod. to Def. Schoultheis. As with the Requests to Defendant Kenton County, the definition of "documents" specifically included "photographs" and "electronic data and files…which are in the possession, custody or control of Defendant and/or their attorneys, representatives, agents, or anyone acting for or on Defendant's behalf." *Id*. Defendant Schoultheis did not produce DX-5 in response to these Requests. Ex. 1, ¶¶ 3, 5; Ex. 1-H, Def. Schoultheis Resp. to Req. for Prod.

> D. **Defendant Schoultheis's Answers to Interrogatories**

Further, Defendant Schoultheis should have identified this photograph in response to the following interrogatories propounded October 5, 2021:

> **INTERROGATORY 7:** Please identify and describe in detail each document, trial exhibit or other tangible object which you intend to introduce into evidence, reference at trial, or expose to the finder of fact at the trial of this action.
>
> **INTERROGATORY 11:** Do you know of any documents, objects and/or tangible things that are not presently within your possession or control which, if they were, would be producible pursuant to Plaintiff's Request for Production of Documents? If so, describe in detail such documents, objects and/or tangible things and indicate who(m) is the present custodian of these materials.

Ex. 1-G, Interrogs. to Def. Schoultheis. Defendant Schoultheis did not identify DX-5 in his Answers to Interrogatories. Ex. 1, ¶¶ 3, 5; Ex. 1-H, Def. Schoultheis Ans. to Interrogs.

**ANALYSIS**

> I. **The Court Should Exclude Exhibit DX-5 as Irrelevant Under the Court's Prior Rulings and Because Any Arguable Minimal Probative Value of DX-5 is Outweighed by the Serious Danger of Unfair Prejudice and Jury Confusion.**

Under Fed. R. Evid. 401, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Irrelevant evidence is inadmissible. Fed. R. Evid. 402. The Court should exclude DX-5 as inadmissible and irrelevant under the Court's prior rulings.

DX-5 appears to show Plaintiff with a spot on his pants at some time during booking. The photograph, of course, does not reveal the cause, source, or texture of this spot. Defendants intend to offer DX-5 to argue that Plaintiff urinated on himself at some point before the use of force at issue. Ex. 1-A. Setting aside the fact that this photograph could depict a spot caused by spilled water or alcohol—which may or may not have still been wet at the time of the photo, whether Plaintiff urinated on himself is not a "fact of consequence in determining the action." While urinating on oneself may be typical of alcohol intoxication, Plaintiff has already admitted that he was intoxicated. As the court has already held, this is irrelevant to the propriety of using force: "[t]he undisputed fact that Williams was intoxicated does not indicate that he posed a threat, particularly in light of Defendants' acknowledgement that Williams had not displayed any physical aggression up to that point." Doc. 93, PageID #2100, citing *Lawler v. City of Taylor*, 268 F. App'x 384, 387 (6th Cir. 2008).

Plaintiff anticipates that Defendants will use DX-5 to argue that Plaintiff tossed wet underwear at Schoultheis's face to argue that it stuck to Schoultheis's face and obscured his vision. See Doc. 74, PageID #352 (arguing "the underwear blocked Schoultheis's vision, making him vulnerable to further physical aggression"). But the Court has already held, as shown on the video, that the underwear never blocked Schultheis's vision, so this is irrelevant: "[a]t no point did the underwear block Deputy Schoultheis's vision, as they landed on his shoulder and had been removed from his person entirely by Deputy Slaughter before he ever made contact with Williams." Doc. 93, PageID #2099, citing Doc. 76.

Further, under Defendants' own witnesses' testimony and Defendant Kenton County's use-of-force policies, whether Plaintiff's underwear was wet (with urine or otherwise) is irrelevant. Kenton County Fed. R. Civ. P. 30(b)(6) representative Captain Trey Smith testified whether an

inmate threw soiled or unsoiled clothes at a deputy, the County would still classify the action as "active aggression" under its use-of-force continuum dictating the level of appropriate responsive force. Smith Dep., p. 113–16, 159. The County's other witnesses corroborate this conclusion. Carmen Dep., Doc. 74-11, PageID ##899–902 ; Kelly Dep., pp. 28, 102.

So why would Defendants seek to introduce DX-5, given its lack of relevance to whether Defendant Schoultheis's use of force was justified and the Court's prior rulings?

The only purpose for which Defendants could seek to use DX-5 is one revealed by their prior arguments: to invoke a disgust response and inflame the jury to sympathize with Schoultheis's retaliatory use of force. Despite Schoultheis's testimony (which gave no indication that Plaintiff's underwear was wet), and despite the video evidence showing the underwear did not touch Schoultheis's face, Defendants have repeatedly argued that Plaintiff "flung his dirty underwear into Schoultheis's face." Doc. 74, PageID #348; *see also id*. ("BWC shows Williams fling his dirty underwear at Dep. Schoultheis's face"); *id.* at PageID #349 ("video shows shows Schoultheis…disinfect his face from the contact with Williams's dirty underwear"); *id*. at PageID #352 (referring to "throwing dirty underwear into the face of a deputy" and arguing that Plaintiff "used his dirty underwear that had been in contact with his genitalia and anus all day to block Schoultheis's vision"); *id.* at PageID #354 (referring to "Williams throwing his recently worn dirty underwear at a deputy's face"); Doc. 90, PageID #1982 (referring to Williams as "an inmate who used his dirty underwear to partially block his vision"). Plaintiff specifically anticipates that Defendants' efforts to inflame the jury against Plaintiff will include an appeal to bias against gay men, as reflected by Defendants' reference to "underwear that had been in contact with his genitalia and anus all day." Doc. 74 at PageID #354; *see also* Williams Dep., Doc. 74-1 at PageID #470.

Page **8** of **12**

Defendants clearly intend to describe the underwear in a manner that would disgust the jury and confuse the issues. The Court should not allow this approach. Even if DX-5 arguably had some minimal probative value (of which Defendants have offered no argument), it would be vastly outweighed by the danger of unfair prejudice, so the Court should exclude DX-5 under Fed. R. Evid. 403.

Additionally, Defendants' use of DX-5 would needlessly harass and embarrass Plaintiff, who has already testified extensively about his shame and embarrassment regarding his alcohol intoxication that evening and that he felt targeted as a gay man. Williams Dep., Doc. 74-1, PageID ## 406, 419–20, 427–28, 470. In the absence of any legitimate purpose for admitting DX-5 into evidence, the Court should exclude it under Fed. R. Evid. 401–403.

II. **The Court Should Exclude DX-5 Pursuant to Fed. R. Civ. P. 37(c)(1) Because Defendants Improperly Withheld DX-5 in Violation of Their Discovery Obligations.**

Under Fed. R. Civ. P. 37(c)(1), "[i]f a party fails to provide information…as required by Rule 26(a) or (e), the party is not allowed to use that information…at a trial, unless the failure was substantially justified or is harmless." Defendants were required to produce DX-5 under both Fed. R. Civ. P. 26(a) (which mandates initial disclosure of or identification of all documents in a party's possession, custody, or control that may support a claim or defense) and 26(e) (which requires timely supplementation of Rule 26(a) disclosures, responses to requests for production, and answers to interrogatories). It is undisputed that Defendants failed to timely produce DX-5 under Rules 26(a) and (e).

Defendants' failure to disclose DX-5 was neither substantially justified nor harmless, so the mandatory language of Rule 37(c)(1) requires exclusion. To determine whether a non-disclosure was substantially justified or harmless, the Sixth Circuit uses a five-factor balancing

test that considers: "(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence." *Howe v. City of Akron*, 801 F.3d 718, 747 (6th Cir. 2015). District courts "have broad discretion in applying these factors and need not apply each one rigidly." *Bisig v. Time Warner Cable, Inc.*, 940 F.3d 205, 219 (6th Cir. 2019).

These factors all weigh heavily in favor of a Court order prohibiting Defendants from using DX-5 at trial. (1) This existence of this exhibit was never disclosed to Plaintiff until the evening of March 13 and was not produced until March 14—just one business day before trial. Plaintiff was unquestionably surprised by this eve-of-trial disclosure. (2) Plaintiff is unable to cure this surprise by conducting discovery regarding this photograph because fact discovery has long closed, and neither the parties nor counsel have time for propounding and responding to written discovery or re-opening depositions before trial begins Monday, March 17. (3) Allowing the evidence would disrupt the trial by requiring additional hearings and argument regarding permitted uses of DX-5. (4) As detailed above, DX-5 has no probative value to the jury's determination of whether Defendant Schoultheis used excessive force. Whether Plaintiff's pants were previously wet is irrelevant to whether Schoultheis's use of force was legally justified.

(5) Finally, Defendants have offered no explanation whatsoever to explain or excuse their failure to produce DX-5 before March 14, 2025. Although Defendants' counsel's March 13 email indicates that he did not previously know DX-5 existed, an attorney's ignorance does not excuse nondisclosure. The discovery obligations of Fed. R. Civ. P. R. 26 apply to the parties—as do the remedies provided by Fed. R. Civ. P. 37(c)(1). It is undisputed that Defendant Kenton County had

possession of DX-5 and inexplicably failed to disclose it. Ex. 1-B, Email sent Mar. 14, 2025 at 8:20 a.m. (forwarding email from Kenton County Lt. Jon Spang showing upload screenshot).

## CONCLUSION

For the reasons set forth above, Plaintiff Cary Williams respectfully submits that the Court should exclude Defendants' Exhibit DX-5 under Fed. R. Evid. 401 – 403 and Fed. R. Civ. P. 37(c)(1).

Respectfully submitted,

*/s/ Jacqueline Greene*
Jacqueline Greene (0092733)
Alphonse A. Gerhardstein (OH 0032053)
FG+G
35 E. 7th Street, Suite 201
Cincinnati, OH 45202
T: 513-572-4200
F: 216-621-0427
jacqueline@FGGfirm.com
al@FGGfirm.com

Sarah Gelsomino (0084340)
FG+G
50 Public Square, Suite 1900
Cleveland, OH 44113
T: 216-241-1430
F: 216-621-0427
sarah@FGGfirm.com

Gary F. Franke (*Pro Hac Vice*)
Michael O'Neill (*Pro Hac Vice*)
GARY F. FRANKE CO., L.P.A.
120 East 4th Street - Suite 1040
Cincinnati, Ohio 45202
T: (513) 564-9222
F: (513) 564-9990
gff@garyfrankelaw.com
mdo@garyfrankelaw.com

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

    I hereby certify that on March 16, 2025, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

                                          */s/ Jacqueline Greene*
                                          Jacqueline Greene (0092733)
                                          *One of the Attorneys for Plaintiff*